IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

M.D., an individual, and T.D., an individual,

    Plaintiffs,

    v.                                                                        Case No. 1:24-cv-00730-KWR-KK

COOPERSURGICAL, INC., and THE
COOPER COMPANIES, INC.,

    Defendants.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT
COOPERSURGICAL'S PARTIAL MOTION TO DISMISS**

**THIS MATTER** comes before the Court upon Defendant CooperSurgical, Inc.'s Partial Motion to Dismiss Plaintiffs' First Amended Complaint (**Doc. 27**). Having reviewed the parties' pleadings, exhibits, and the relevant law, the Court finds that the motion is not well-taken, and, therefore, is **DENIED**.

## BACKGROUND

M.D. and T.D. (collectively, "Plaintiffs") bring strict products liability (manufacturing defect, design defect, and failure to warn), negligence, and negligent failure to recall causes of action against Defendants CooperSurgical, Inc. and The Cooper Companies, Inc. (collectively, "Defendants"). **Doc. 26, at 1**. Plaintiffs' claims arise from their loss of embryos and failed in vitro fertilization ("IVF") procedure allegedly caused by Defendants' negligence and faulty embryonic culture media. *Id.* ¶¶ **1–2, 42**.

Plaintiffs allege Defendants manufacture and market embryo culture media. *Id.* ¶ **36**. A developing embryo needs a culture media that contains magnesium. *Id.* ¶ **23**. In December 2023,

Defendants issued a recall of several lots of culture media that lacked magnesium. *Id.* ¶¶ 30–36, 46.

M.D. began the IVF process in July 2023 and underwent a transfer procedure in December 2023. *Id.* ¶¶ 39, 42. M.D. used the recalled culture media, and the embryo did not implant. *Id.* ¶ 42–43. The loss "devastated" Plaintiffs, and they have suffered "substantial emotional and mental distress." *Id.* ¶ 45.

On June 11, 2024, Plaintiffs filed suit in New Mexico's Second Judicial District Court. **Doc. 1-1, Ex. 1, at 1**. Defendants timely removed to federal court. **Doc. 1, at 8**. Plaintiffs amended their Complaint on May 28, 2025. **Doc. 26**. Defendant CooperSurgical moves to dismiss Plaintiffs' First Amended Complaint in part. **Doc. 27**.

## LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the factual allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Well-pleaded factual allegations are "accepted as true and viewed in the light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014). In ruling on a motion to dismiss, a court disregards conclusory allegations and conclusory statements of law. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

## DISCUSSION

Pursuant to Rule 12(b)(6), Defendant CooperSurgical moves to dismiss the following causes of action: (1) design defect, (2) failure to warn, (3) negligence, and (4) failure to recall timely. **Doc. 27 at 1–3**. Plaintiffs contend they sufficiently plead each of these claims. **Doc. 38, at 1–2**. The Court agrees and addresses each cause of action in turn.

I. **Strict products liability.**

Under a strict products liability theory, a plaintiff must prove the following five elements: (1) the product was defective; (2) the product was defective when it left the defendant and was substantially unchanged upon reaching the consumer; (3) the defect caused the product to be unreasonably dangerous; (4) the consumer was injured or damaged; and (5) the product's defective condition proximately caused the harm. *Garner v. Raven Indus., Inc.*, 732 F.2d 112, 114 (10th Cir. 1984) (citing *Tenney v. Seven-Up Co.*, 1978-NMCA-090, ¶ 4, 92 N.M. 158, 584 P.2d 205). New Mexico courts apply the theory of products liability to design, manufacturing, and marketing defects. *Morales v. E.D. Etnyre & Co.*, 382 F. Supp. 2d 1252, 1265 (D.N.M. 2005) (citing *Smith ex rel. Smith v. Bryco Arms*, 2001-NMCA-090, ¶ 8, 131 N.M. 87, 33 P.3d 638). Ordinarily, a jury decides if a product is unreasonably dangerous. *Smith*, 2001-NMCA-090, ¶ 14.

A. **Design defect.**

Defendant CooperSurgical moves to dismiss Plaintiffs' second cause of action: strict products liability based on a design defect. **Doc. 27 at 4**. Defendant CooperSurgical argues Plaintiffs fail to state a claim for a design defect. **Doc. 27 at 5–6**. Plaintiffs contend they sufficiently state a claim for a design defect, or alternatively, they do not need to allege the culture media's risks outweighed its benefits. **Doc. 38 at 3–5**.

A product is defective if an unreasonable risk of injury results from a condition or use of the product. *McDonald v. Zimmer Inc.*, 2020-NMCA-020, ¶ 26, 461 P.3d 930 (quoting UJI

3

13-1406 NMRA). If a reasonably prudent person, with full knowledge of the risk, would find it unacceptable, the risk of injury is unreasonable. *Id.* (quoting UJI 13-1407). In determining whether the risk of injury is unreasonable, the fact-finder conducts "a risk-benefit calculation" and balances a manufacturer's safety choices with minimizing the risk that the public is needlessly deprived of a beneficial product. *Smith*, 2001-NMCA-090, ¶ 14. Part of the risk-benefit calculation includes considering "any 'reasonable alternative design.'" *Suttman-Villars v. Argon Medical Devices, Inc.*, 553 F. Supp. 3d 946, 958 (D.N.M. 2021) (quoting *Bustos v. Hyundai Motor Co.*, 2010-NMCA-090, ¶ 53, 149 N.M. 1, 243 P.3d 440). Ultimately, the question is whether the product poses "an unreasonable risk of [injury], taking into account the relative risks and benefits of its design." *McDonald*, 2020-NMCA-020, ¶ 28.

### 1. Plaintiffs sufficiently allege the risks outweigh its benefits.

Defendant CooperSurgical argues Plaintiffs fail to allege plausible facts that the culture media's risks outweigh its benefits.[1] **Doc. 27 at 5**. The Court disagrees. Plaintiffs allege the "benefits of the Recalled Embryo Culture Media Lots are not outweighed by their risks . . . [considering] their use on reproductive materials, including embryos . . . the feasibility of an alternative safer design at the time of manufacture; and the feasibility of more reliable testing methods." **Doc. 26 ¶ 68**. Further, Plaintiffs allege Defendant CooperSurgical knew or should have known that culture media without enough magnesium "may result in the demise of the patient's embryos and increases costs to both the patient and the clinics." **Doc. 26 ¶ 33**. The Court may

---

[1] Defendant CooperSurgical also argues it is "implausible" the culture media poses an unreasonable risk because the risk of injury from the media is "nonexistent, whereas the benefit" is great. **Doc. 27 at 5**. Plaintiffs allege that their injury is the "destruction" of their developing embryos, mental and emotional distress, pain and suffering, and medical expenses. **Doc. 26 ¶ 60**. Thus, it is plausible that the media poses an unreasonable risk since a reasonably prudent person, with full knowledge, could find the alleged risks unreasonable.

reasonably infer that the risks associated with magnesium-deficient media outweigh any benefits of the recalled lots.

### 2. Plaintiffs sufficiently allege an alternative design.

Defendants contend Plaintiffs fail to allege a reasonable alternative design as New Mexico law requires. **Doc. 28 at 5**. Plaintiffs argue they need not propose an alternative design. **Doc. 38 at 4–5**. Courts have found failure to allege a feasible design alternative warrants dismissal. *See Nowell v. Medtronic, Inc.*, 372 F. Supp. 3d 1166, 1250 (D.N.M. 2019) ("[Plaintiff's] failure to allege a feasible design alternative is a further basis on which the Court will dismiss her strict liability claims.").

Here, Plaintiffs sufficiently allege feasible alternative designs. Plaintiffs allege the "feasibility of an alternative safer design." **Doc. 26 ¶ 68**. They allege the "Recalled Embryo Culture Media Lots had risks, including but not limited to[,] defective formulation." *Id.* ¶ 77. The alleged defect in the media's formulation was "the lack of magnesium." *Id.* "Magnesium is a critical ingredient . . . . [and] an essential nutrient in embryonic and human fetal growth." *Id.* ¶ 24. Thus, the alleged alternative design is one that includes magnesium.

Plaintiffs also allege the "feasibility of more reliable testing methods and procedures." *Id.* ¶ 68. Plaintiffs allege Defendant CooperSurgical "knew or should have known that their embryo culture media was not properly and/or adequately tested and/or inspected." *Id.* ¶ 37. Further, Plaintiffs allege Defendant CooperSurgical promoted that its "media was tested by superior methods, e.g., a Mouse Embryo Assay, to ensure that the media was properly formulated." *Id.* ¶ 36. Thus, Plaintiffs sufficiently plead a feasible, alternate design concerning Defendant CooperSurgical's process for testing its media.

Plaintiffs sufficiently allege feasible alternatives that are safer. Rather than alleging alternatives to the use of the culture media altogether, they allege safer formulations and testing processes for Defendant CooperSurgical's culture media. *See Nowell*, 372 F. Supp. 3d at 1250 (holding that alleging alternatives to the product altogether fails to allege a feasible design alternative). Therefore, the Court finds that Plaintiffs sufficiently plead an alternative design.

### 3. Plaintiffs do not restate a manufacturing defect claim.

Defendant CooperSurgical argues that Plaintiffs simply restate their manufacturing defect claim as a design defect. **Doc. 41, at 3–4**. Defendant CooperSurgical argues the following allegations relate exclusively to a manufacturing defect claim: (1) the media was "defective in design" because "it lacked an essential ingredient, magnesium,'" **Doc. 26 ¶¶ 69–70**; (2) the media "differed from Defendants' intended result," *id.* ¶ 58; and (3) Defendants "failed to adequately monitor their manufacturing system," *id.* ¶ 34. The Court disagrees.

A manufacturing defect occurs when a "product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product." *Spectron Dev. Lab'y v. Am. Hollow Boring Co.*, 1997-NMCA-025, ¶ 14, 123 N.M. 170, 936 P.2d 852. A design defect occurs if a condition or use of a product creates an unreasonable risk of injury. *McDonald*, 2020-NMCA-020, ¶ 26.

Allegations need not be construed exclusively toward one claim. Both the New Mexico and the Federal Rules of Civil Procedure allow alternative pleading of civil claims. N.M. R. Civ. P. 1-008(E)(2); Fed. R. Civ. P. 8(d)(2). While some allegations directly relate to a manufacturing defect claim, other claims relate to a design defect claim. Plaintiffs allege a culture media that contains no magnesium presents "an unreasonable increased risk," and its benefits do not outweigh

6

its risks. **Doc. 26 ¶¶ 68–69**. Construing Plaintiffs' allegations nonexclusively, the Court finds that Plaintiffs sufficiently plead a design defect cause of action.

B. **Failure to warn.**

Defendant CooperSurgical moves to dismiss Plaintiffs' third cause of action: strict products liability based on a failure to warn. **Doc. 27 at 6**. Defendant CooperSurgical argues the failure to warn claim fails for the following reasons: (1) Defendant CooperSurgical is required to warn only medical providers of the risks under the learned intermediary rule; (2) Plaintiffs failed to allege Defendant CooperSurgical was aware of the defect and could have warned M.D.; (3) Plaintiffs did not allege facts showing Defendant CooperSurgical was the cause of the embryo's failure to implant; and (4) Plaintiffs must allege their person was harmed, not their embryo.

In New Mexico, a failure to warn claim requires a plaintiff to prove the following: (1) no warning was provided, or the warning was inadequate; and (2) the absence or inadequacy caused plaintiff's injury. *Suttman-Villars*, 553 F. Supp. 3d at 961.

1. **Plaintiffs are not barred by the learned intermediary doctrine.**

Under the learned intermediary doctrine, if a product is obtainable only through a physician, a manufacturer fulfills its duty to warn by warning the physician, not the patient. *Perfetti v. McGhan Medical*, 1983-NMCA-032, ¶ 15, 99 N.M. 645, 662 P.2d 646. An adequate warning discloses "the nature and extent of the danger." *Jones v. Minnesota Mining & Mfg. Co.*, 1983-NMCA-106, ¶ 32, 100 N.M. 268, 669 P.2d 744.

Here, Defendant CooperSurgical argues the learned intermediary doctrine bars Plaintiffs' claim because their medical provider was warned. **Doc. 27 at 6**. But Plaintiffs allege Defendant CooperSurgical "failed to warn consumers, including but not limited to Plaintiffs *and Plaintiffs' fertility providers*." **Doc. 26 ¶ 79** (emphasis added). As alleged, Defendant CooperSurgical did not

7

warn Plaintiffs' medical provider. *Id.* The Court finds that Plaintiffs are not barred by the learned intermediary doctrine.[2]

### 2. Plaintiffs sufficiently allege knowledge.

Defendant CooperSurgical argues that Plaintiffs failed to allege Defendants were aware of the defect and could have warned Plaintiff M.D. to prevent her injuries. **Doc. 41 at 6**. This argument also fails. Plaintiffs allege Defendant CooperSurgical "knew or should have known the embryo culture media . . . lacked vital nutrients." **Doc. 26 ¶ 61**. Plaintiffs also allege, "Despite their awareness its embryo culture media . . . was defective . . . Defendants failed to warn consumers . . . ." *Id.* **¶ 79**. The Court finds Plaintiffs sufficiently allege Defendant CooperSurgical was aware and still failed to warn Plaintiffs that the media lacked essential nutrients.

### 3. Plaintiffs sufficiently allege causation.

Plaintiffs sufficiently allege that Defendant CooperSurgical's failure to warn caused Plaintiffs' injury. While IVF success is uncertain, Plaintiffs allege the "lack of sufficient warnings was a substantial factor in causing" their harm. *Id.* **¶ 82.** Further, Plaintiffs allege defective media would not have been used "if Defendants had provided sufficient warning . . . ." *Id.* Although failed implantation is a common risk, the increased chance of failure due to a media lacking magnesium is not a common risk. *See Nowell*, 372 F. Supp. 3d at 1251 (rejecting allegations of failure to warn when a plaintiff named risks common place with normal hernia repairs). Plaintiffs also allege they would not have used the media had they been warned. *Cf. Id.* (dismissing failure to warn claim when a plaintiff failed to allege that warnings would have prevented the defendant's

---

[2] Defendant CooperSurgical also argues Plaintiffs fail to suggest what warnings would have been adequate. **Doc. 27 at 7**. But Plaintiffs allege "Defendant failed to warn consumers . . . that the embryo culture media had not been properly and/or sufficiently tested, and/or lacked ingredients essential to embryonic growth." **Doc. 26 ¶ 79**. Therefore, Plaintiffs do suggest warnings that would have been adequate had they not been omitted.

8

product from being used). The Court finds that Plaintiffs adequately plead causation for a failure to warn claim.

### 4. Plaintiffs sufficiently allege harm.

Defendant CooperSurgical contends Plaintiffs must allege "they were harmed by the alleged failure to warn" and harm to "Plaintiffs' embryo" is insufficient. **Doc. 27 at 8–9**. The Court disagrees.

New Mexico has adopted the strict liability standards set forth in the Restatement (Second) of Torts, Section 402A, with some modifications. *McDonald*, 2020-NMCA-020, ¶ 37. The product must have been in a "defective condition unreasonably dangerous to the user or consumer *or to his property*." *Standhardt v. Flinktkote Co.*, 1973-NMSC-040, ¶ 14, 84 N.M.796, 508 P.2d 1283 (emphasis added); Restatement (Second) of Torts § 402A(1) (1965).

Here, without New Mexico law on point, Defendant CooperSurgical contends an embryo would likely be considered property. **Doc. 27 at 9**. Such a finding would not be contrary to New Mexico laws. *See Miller v. Kirk*, 1995-NMSC-067, ¶ 18, 120 N.M. 654, 905 P.2d 194 ("[W]e hold that the term 'person' in Section 41–2–1 does not include a nonviable fetus."). Assuming, without deciding, that an embryo is considered property under New Mexico law, Plaintiffs sufficiently plead injury to their property as required. Plaintiffs allege Defendant CooperSurgical's media presented "an unreasonable increased risk of damage or destruction to . . . embryos." **Doc. 26 ¶ 69**. Further, Plaintiffs allege that the "risks of defective embryo culture media . . . presented a substantial danger, including . . . the destruction of viable embryos . . . ." *Id.* **¶ 78**. Thus, Plaintiffs sufficiently allege the culture media was unreasonably dangerous to their property.

Accordingly, the Court finds that Plaintiffs sufficiently allege a failure to warn cause of action.

## II. **Negligence.**[3]

Defendant CooperSurgical moves to dismiss Plaintiffs' fourth cause of action: negligence. **Doc. 27 at 9**. Defendant CooperSurgical contends Plaintiffs insufficiently plead causation and damages. *Id.* **at 10**.

To establish a negligence claim, a plaintiff must show the following: (1) the defendant owed the plaintiff a duty; (2) the defendant breached that duty; and (3) the breach was a proximate and but-for cause of the plaintiff's damages. *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 6, 134 N.M. 43, 73 P.3d 181. Failing any element is "fatal to a negligence claim." *Romero v. Giant Stop-N-Go of New Mexico, Inc.*, 2009-NMCA-059, ¶ 5, 146 N.M. 520, 212 P.3d 408.

### 1. Plaintiffs sufficiently allege causation.

Defendant CooperSurgical argues the "IVF process is arduous and uncertain," and Plaintiffs fail to allege facts establishing causation. **Doc. 27 at 10**. The Court disagrees.

Here, Plaintiffs allege that Defendants negligently "fail[ed] to properly or adequately test their . . . media," promoted the media as safe "despite their knowledge of its defective nature," and defectively designed and manufactured the media. **Doc. 26 ¶ 93**. Although the IVF process is inherently uncertain, Plaintiffs can still sufficiently allege the media "lacked an essential ingredient" and caused the loss of their embryo. *Id.* **¶ 70**. At this stage, Plaintiffs need only allege Defendant CooperSurgical' negligence caused their injury. *See Talbott v. Roswell Hosp. Corp.*, 2005-NMCA-109, ¶ 34, 138 N.M. 189, 118 P.3d 194 ("[Causation is] generally a question of fact for the jury to decide."). The Court finds that Plaintiffs sufficiently allege causation.

---

[3] Plaintiffs refer to "Negligence/Gross Negligence" in their First Amended Complaint. **Doc. 26 at 1**. New Mexico has abolished the distinction between negligence and gross negligence, however. *Paiz v. State Farm Fire & Cas. Co.*, 1994-NMSC-079, ¶ 29, 118 N.M. 203, 880 P.2d 300 ("[T]he concept of gross negligence . . . is a legal anachronism in New Mexico."); *Dunleavy v. Miller*, 1993-NMSC-059, ¶ 21, 116 N.M. 353, 862 P.2d 1212 ("[W]e therefore abolished the . . . distinction between ordinary and gross negligence."). Therefore, the Court construes Plaintiffs' "Negligence/Gross Negligence" cause of action as a negligence action.

10

## 2. Plaintiffs' damages are not barred by the economic loss doctrine.

Defendant CooperSurgical also contends that the economic loss rule, if embryos are considered property, likely precludes Plaintiffs from recovering damages in tort.[4] **Doc. 27 at 10–11**. The Court disagrees.

The New Mexico Supreme Court has adopted the economic loss rule, holding that "in commercial transactions, when there is no great disparity in bargaining power of the parties . . . economic losses from injury of a product to itself are not recoverable in tort actions." *Utah Int'l, Inc. v. Caterpillar Tractor Co.*, 1989-NMCA-010, ¶ 17, 108 N.M. 539, 775 P.2d 741 (citing *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 873 (1986)). The economic loss rule does not allow recovery "in tort for losses that are purely economic, i.e., not involving personal injury or property damage." *Farmers All. Mut. Ins. v. Naylor*, 480 F. Supp. 2d 1287, 1289 (D.N.M. 2007) (citation omitted). A loss is purely economic if "no person or *other property* is damaged." *Utah Int'l, Inc.*, 1989-NMCA-010, ¶ 15 (emphasis added) (quoting *East River S.S. Corp.*, 476 U.S. at 870)).

Here, Plaintiffs allege damages including "destruction of their developing embryos," **doc. 26 ¶ 93**, "medical costs, pain and suffering, mental and emotional distress, and other damages," *id.* **¶ 95**. Defendant CooperSurgical contends embryos would likely be considered property in New Mexico. **Doc. 27 at 9**. Thus, Plaintiffs allege a loss to other property, making the loss not purely economic. Further, the economic loss rule applies when losses result from "injury of a product to itself." *Utah Int'l, Inc.*, 1989-NMCA-010, ¶ 17. The product is Defendant CooperSurgical's

---

[4] Defendant CooperSurgical also argues if the damages are the subject matter of a contract, recovery is more appropriate under a contract action. **Doc. 27 at 11**. Defendant CooperSurgical argues economic losses in commercial settings in New Mexico may only be recovered in contract actions. *In re Consol. Vista Hills Retaining Wall Litig.*, 893 P.2d 438, 446 (N.M. 1995). This argument fails. "[E]conomic losses" refers to "economic losses from injury of a product *to itself*." *Id.* (emphasis). Defendant CooperSurgical's argument would have merit if Plaintiffs suffered economic losses because the embryo culture media damaged itself. But, here, the embryo culture media damaged Plaintiffs' embryos. Accordingly, Plaintiffs are not limited to contract claims at this stage.

culture media, not Plaintiffs' embryos. The culture media did not harm itself, rather it allegedly harmed Plaintiff's embryos. As such, the Court finds that the economic loss rule does not apply.

### 3. Plaintiffs' damages are not too speculative.

Defendant CooperSurgical argues that Plaintiffs' alleged damages "are too speculative and remote for recovery." **Doc. 27 at 10**. The Court disagrees.

Damages may not be "based on surmise, conjecture or speculation." *Mascarenas v. Jaramillo*, 1991-NMSC-014, ¶ 22, 111 N.M. 410, 806 P.2d 59. The party seeking damages bears the burden of proving damages with reasonable certainty. *Sanchez v. Martinez*, 1982-NMCA-168, ¶ 20, 99 N.M. 66, 653 P.2d 897.

Defendant CooperSurgical focuses on the difficulty of compensating for lost embryos in tort. **Docs. 27 at 10–11; 41 at 6–7**. Plaintiffs allege their damages include "loss of embryos, mental and emotional distress, medical expenses, and pain and suffering." **Doc. 26 ¶ 81**. Assuming, without deciding, that Defendant correctly posits that New Mexico would likely consider embryos property, expert testimony can establish the value of the lost property. Plaintiffs also claim medical expenses which are recoverable under New Mexico law. *Bailey v. Jeffries-Eaves, Inc.*, 1966-NMSC-094, ¶ 45, 76 N.M. 278, 414 P.2d 503 ("A plaintiff may recover medical expenses and lost wages incurred by a defendant's negligence . . . ."). The Court finds that Plaintiffs seek recoverable damages that are not so remote or speculative to warrant dismissal.[5]

## III. <u>Negligent failure to recall.</u>

---

[5] New Mexico law limits recovery for emotional distress, and pain and suffering. Emotional distress damages are only recoverable for claims of negligent or intentional infliction of emotional distress, loss of consortium, intentional misconduct, defamation or physical injury. *Castillo v. City of Las Vegas*, 2008-NMCA-141, ¶ 22, 145 N.M. 205, 195 P.3d 870. A plaintiff may recover damages for pain and suffering caused by a physical injury. *See Higgins v. Hermes*, 1976-NMCA-066, ¶ 7, 89 N.M. 379, 552 P.2d 1227 (citing *Rutledge v. Johnson*, 1970-NMSC-023, ¶ 7, 81 N.M. 217, 465 P.2d 274). Here, Plaintiffs do not allege any claim making them eligible for emotional distress damages, and they do not allege any physical injury. Therefore, emotional distress and pain and suffering damages are unavailable.

Defendant CooperSurgical moves to dismiss Plaintiffs' fifth cause of action, negligent failure to recall timely, on the grounds New Mexico does not recognize the cause of action. **Doc. 27 at 11–12**.[6]

In New Mexico, a supplier of a product has a "duty to use ordinary care" even after the product leaves its possession. UJI 13-1402. If the supplier later learns, or should have known, of a risk of injury caused by a condition of the product or possible use, then the supplier must use ordinary care to avoid the risk. *Id.* New Mexico courts have found that a supplier's duty may endure after the initial sale, and the jury must determine whether the exercise of ordinary care requires the defendant to retrofit or recall. *See Couch v. Astec Indus., Inc.*, 2002-NMCA-084, ¶ 44, 132 N.M. 631, 53 P.3d 398 ("[I]t is for the jury to determine what steps—whether by warning or retrofitting or some other means—a supplier must take in the exercise of ordinary care."). The New Mexico Supreme Court's adoption of UJI 13-1402 suggests New Mexico recognizes a supplier has a "continuing duty of ordinary care to avoid a risk of injury if it knows or should know that such a risk is caused" by their product. *Id.* ¶ 45.

Here, Plaintiffs allege Defendants "acted with conscious disregard for the safety of consumers" when they "knew or should have known the embryo culture media . . . lacked vital nutrients . . . and failed to recall the Recalled Embryo Culture Media Lots before the embryo culture media was used to culture and develop Plaintiffs' embryos." **Doc. 26 ¶ 112**. While New Mexico law does not explicitly recognize a specific failure to recall cause of action or a duty to retrofit, such determinations may be made by a jury once a plaintiff alleges a supplier comes to

---

[6] Defendant CooperSurgical, pointing to *Morales*, 382 F. Supp. 2d at 1287, argues that "negligent failure to recall timely . . . is not a recognized cause of action under New Mexico law. **Doc. 27 at 12**. *Morales* is not broadly "rejecting a 'duty to retro-fit or recall'" as Defendant CooperSurgical suggests, however. *Id. Morales* was specifically about whether the "*duty to maintain* is so broad that it includes the duty to retro-fit or recall." *Morales*, 382 F. Supp. 2d at 1287 (emphasis added).

know of risks after selling a product. *Couch*, 2002-NMCA-084, ¶ 44 (finding UJI 13-1402 charges a jury with determining what steps must be taken, such as warning or retrofitting, after a supplier knows or should know of risks with the product). At this stage, the Court finds that Plaintiffs sufficiently plead a negligence cause of action based on a failure to recall.

## CONCLUSION

Based on the above discussion, the Court finds that Plaintiffs sufficiently plead each cause of action and survive Defendant CooperSurgical's Partial Motion to Dismiss.

**IT IS THEREFORE ORDERED** that Defendant CooperSurgical's Partial Motion to Dismiss Plaintiffs' First Amended Complaint (**Doc. 27**) is hereby **DENIED** for reasons described in this Memorandum Opinion and Order.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE